IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br> Plaintiff, <br><br> v. <br><br> **RANDY RIOS SANCHEZ,** <br> Defendant. | CRIM. NO. 23-472 (FAB-MDM) |

## REPORT AND RECOMMENDATION

### I. Introduction and Procedural History

The defendant, Randy Ríos Sanchez ("defendant"), stands charged in a two-count indictment with possessing firearms in furtherance of a drug trafficking crime, in violation of Title 18, *United States Code*, Sections 924(c)(1)(A) (Count One), and possession with intent to distribute controlled substances, namely cocaine base, in violation of Title 21, *United States Code*, Section 841(a)(1) (Count Two) (the "Indictment"). *See* Docket No. 3.

Pending before the Court is the defendant's motion to suppress certain evidence seized during a traffic stop of a 2024 black Hyundai Venue (the "Hyundai Venue" or the "Vehicle") that the defendant was driving (the "Motion to Suppress"). *See* Docket No. 21. The traffic stop was conducted by Puerto Rico Police Bureau ("PRPB") officers and resulted in a warrantless search of the Vehicle and the seizure of a firearm and controlled substances found on the defendant's person and in the back seat of the Vehicle.

The government filed an opposition to the Motion to Suppress (the "Opposition"). *See* Docket No. 25. No reply was filed. The Motion to Suppress was referred to me for a hearing, if necessary, and the preparation of a report and recommendation. *See* Docket Nos. 22 & 23.

Case 3:23-cr-00472-FAB  Document 92  Filed 04/22/25  Page 2 of 16

*United States v. Randy Ríos Sánchez*  Page 2
Crim. No. 23-472 (FAB-MDM)
Report & Recommendation

The Court held three days of hearings related to the Motion to Suppress. The government called as its first witness PRPB Officer Luis Lassalle Vargas ("Officer Lasalle"), who conducted the traffic stop of the Vehicle and performed the warrantless search. The government also presented a stipulation summarizing the testimony of its second witness, PRPB K-9 handler Erick González[1] ("Officer González"). *See* Government Exhibit 15, Docket No. 89-1 at 21-23. The government then rested without presenting any further evidence.

In his case-in-chief, the defendant submitted by stipulation the testimony of his only witness, Ms. Luz del Carmen Roldán Sotomayor ("Ms. Roldán"), Regional Director of the Aguadilla Regional Office of the Department of Transportation and Public Works (referred to hereinafter by its initials in Spanish "DTOP," which stands for the "Departamento de Transportación y Obras Publicas"). *See* Docket No. 66. *See also* Defense Exhibits B and B-1, Docket No. 90-1 at 3 & 4. The defense then rested.

Upon concluding the presentation of the evidence, the Court ordered the parties to file post-hearing briefs. *See* Docket No. 72. The government filed its post-hearing brief on December 5, 2024 ("Government's Post-Hearing Brief"). *See* Docket No. 77. The defendant filed his post-hearing brief on January 27, 2025. ("Defendant's Post-Hearing Brief"). *See* Docket No. 85.

After listening to the testimony presented, evaluating the exhibits, reviewing the stipulations of the parties, and making the necessary credibility assessments, the Court **RECOMMENDS** that defendant's Motion to Suppress be **DENIED**.

---

[1] Throughout the hearing and in the transcript Officer Erick González was also referred to as "Eddie" González.

## II.    The Court's Findings of Fact

On December 26, 2023, at approximately 5:30PM, Officer Lassalle[2] was patrolling the area of Aguadilla with his partner, Officer Vázquez,[3] when he noticed a black Hyundai Venue (the "Hyundai Venue") drive in front of his patrol car as he exited the Super Famcoop supermarket. Docket No. 65 at 18 & 49. The Hyundai Venue was driving on a public access road owned by and under the control of the Puerto Rico Industrial Development Company ("PRIDCO") (the "PRIDCO owned access road") heading towards PR Road 459.[4] Officer Lassalle saw that the Hyundai Venue had all of its windows rolled down and he noticed that the two occupants were not wearing their seatbelts, in violation of Puerto Rico's Law 22.[5] *Id*. at 18.

---

[2] Officer Lassalle is a 14-year veteran of the PRPB. After graduating from the Police Academy, Officer Lassalle was assigned to work at various precincts within the municipality of San Juan. He then spent approximately one year in the PRPB Cyber Crimes Division. After that, he worked with the Criminal Investigations Unit of the Cyber Crimes Unit of Puerto Rico's Department of Justice. He was later moved to the Aguadilla Strike Force Unit, which is where he worked as of the day he testified at the hearing. As part of the Aguadilla Strike Force, he conducts confidential investigations jointly with federal agencies into the activities of dangerous organized crime syndicates that involve drugs and firearms. Docket No. 65 at 15-16.

[3] Officer Vázquez's first name is unknown to the Court.

[4] Both the defendant and the government conceded in their post-hearing briefs that the access road where defendant was first spotted by Officer Lasalle is public property owned by PRIDCO, a public corporation of the Government of Puerto Rico established in 1942. Docket No. 77 at 18; Docket No. 85 at 3. Under Puerto Rico law, a public road includes "any street, road or state or municipal highway, as well as *any street, road or highway located on lands belonging to public corporations created by law and their subsidiaries*, and shall comprise the total width between the boundary lines of every public highway open to public use for the traffic of vehicles or motor vehicles." 9 P.R. Laws §5001 (113) (2000) (emphasis added).

[5] Article 13.02 of PR Law 22, codified at 9 L.P.R.A. §5382, reads, in pertinent part, as follows:

> The use of safety seat belts and child protection seats will be done according to the following rules:
>
> (a) Any person *who drives or travels as a passenger on the public [roads]* in a motor vehicle that must be equipped with safety seat belts according to Article 13.01 of this title, whose seat belts are available and in usable condition, shall be required to adjust and *properly secure said seat belts while the vehicle is being driven on the public [roads]*. It will be the duty of the driver to require the occupants of the vehicle to use the seat belts available and will be liable for failing to do so. In addition, it will be the duty of every driver to not transport more passengers than the number of

Case 3:23-cr-00472-FAB   Document 92   Filed 04/22/25   Page 4 of 16

*United States v. Randy Ríos Sánchez*                                                                    Page 4
Crim. No. 23-472 (FAB-MDM)
Report & Recommendation

Officer Lassalle and Officer Vázquez exited the supermarket parking lot in their patrol car and followed the Hyundai Venue onto the PRIDCO owned access road heading towards PR Road 459. Like the PRIDCO owned access road, there is no dispute that PR Road 459 is also a public road. *Id.* at 51. As the Hyundai Venue proceeded onto Public Road 459, Officer Lassalle activated his lights and siren in an effort to perform a traffic stop. *Id.* After turning onto PR Road 459, the defendant, who was driving the Vehicle,[6] pulled the car over to the side of the road without incident. *Id.* at 51-52. The actual traffic stop was made at kilometer 1.3 on PR Road 459. *Id.* at 18. As Officer Lassalle approached the Vehicle to ask the driver for his license and registration, he observed again that the neither the defendant nor the passenger, who happened to be defendant's brother (*id.* at 33), had their seatbelts fastened. *Id.* When he got even closer to the Vehicle, he also detected a strong odor of marijuana, whereupon Officer Lassalle asked the defendant if he possessed a cannabis license, to which he responded, "No." *Id.* After detecting the odor of marijuana, Officer Lassalle contacted his supervisor, Lieutenant Omar Rosa, who requested the assistance of a K-9 unit. *Id.* at 20.

In the meantime, Officer Lassalle ordered everyone out of the car, whereupon Officer Lasalle patted down the driver and Officer Vázquez patted down the passenger. As Officer Lasalle was patting down the defendant, he felt something in the defendant's right front pants pocket that he said he could not at that time identify whether it was a firearm, a magazine, or perhaps something else. Officer Lasalle immediately informed the defendant of his *Miranda* rights verbally, which the defendant said he understood. *Id.* at 51. The item in his pocket ended up being a cylindrical green plastic M&M candy container whose top was partially open.

---

functional seat belts available in said motor vehicle. (Emphasis added.)

[6] The Hyundai Venue belonged to the defendant's mother and she had given him permission to drive it. *See* Defendant's Exhibit C, Docket No. 90-1 at 5.

Case 3:23-cr-00472-FAB Document 92 Filed 04/22/25 Page 5 of 16

*United States v. Randy Ríos Sánchez* Page 5
Crim. No. 23-472 (FAB-MDM)
Report & Recommendation

Government's Exhibit 10, Docket No. 89-1 at 13. While removing the container from the defendant's pocket, Officer Lasalle said the top of the container fell off.



Officer Lassalle testified that approximately 3-5 minutes after requesting the assistance of a K-9 unit, Officer González arrived on scene with a canine named "Troy 7."[7] Officer González walked the dog around the Vehicle until it stopped near the front passenger-side door and alerted to the presence of controlled substances inside. *Id. See also* Government Exhibit 1 (the photo included to the right) & 1(a), Docket No. 89-1 at 1-2. After the canine alerted to the presence of controlled substances, Officer Lassalle sealed the Vehicle with red tape and placed his initials on the tape. *Id.* at 21.

Officer Lassalle said that he decided to leave the windows in the down position as that was the condition of the Vehicle when he first came upon it. *Id.* at 21.

---

[7] The testimony of Officer Lassalle regarding the amount of time it took for Officer González to arrive on scene after the request for assistance of the canine unit was made is corroborated by the stipulated testimony of Officer González. The parties' stipulated that if called to testify, Officer González would have testified to the following:

  a. Officer Erick González Barreto, badge number 24737, is a PRPB officer assigned to the K-9 Unit in Aguadilla Puerto Rico.
  b. That on December 26, 2023, the day of the incident of the instant case, he arrived at Road 459, 1.3 km, Aguadilla Puerto Rico, in response to K-9 dog service request for a traffic stop.
  c. That he arrived at the traffic stop within minutes of his presence being requested.
  d. That he arrived with K-9 dog Tyson 7, badge number 36639, and conducted an open-air sniff on a Hyundai Venue, black in color, detecting the presence of controlled substances.

Case 3:23-cr-00472-FAB Document 92 Filed 04/22/25 Page 6 of 16

*United States v. Randy Ríos Sánchez* Page 6
Crim. No. 23-472 (FAB-MDM)
Report & Recommendation

*See* Photo above. After that, the police tow truck was called to transport the Hyundai Venue back to the Aguadilla Strike Force Unit. *Id.*

Once they arrived at the Strike Force Unit, the defendant was read and explained his *Miranda* rights again, and was also given a copy of the *Miranda* rights form to read and sign, which he did around 6:29PM. *Id.* at 25. *See also* Government Exhibits 7 & 7(a), Docket No. 89 at 8-9. After reviewing the *Miranda* rights form, the defendant checked the box next to where it says, "I understand the rights that those warnings bestow upon me, and I voluntarily waive the same with the knowledge that I can stop being questioned and/or invoke my right to an attorney at any time. The waiver of these rights has been voluntary, without coercion, intimidation, violence pressure, or promises." Docket No. 65 at 27.

The defendant was also given a Consent to Search form, which was read to him and explained aloud and which he signed. *Id.* at 27. Government Exhibits 8 & 8(a), Docket No. 89-1 at 10-11.[8] After obtaining defendant's consent to search the Vehicle, Officer Lasalle began the search in the presence of the defendant. *Id.* at 30. In the back seat area of the Vehicle, Officer Lasalle found a light gray Ruger pistol, loaded with eight bullets, together with a clear plastic bag containing marijuana. *Id.* at 32.[9] In the middle console between the two front seats, he found a black plastic cup containing the remnants of several smoked marijuana cigarettes. *Id.* Inside the green cylindrical plastic M&M candy container seized from defendant's pocket, Officer Lasalle found an undisclosed number of small clear pressure-sealed bags containing cocaine.[10]

---

[8] The defendant does not challenge in his Motion to Suppress the validity of either the *Miranda* rights form or the Consent to Search form.

[9] The parties mentioned in the pleadings that the firearm and marijuana were found inside a black bag. The Court notes, however, that there was no mention of a black bag during the hearing. For that reason, the Court's findings of fact do not specifically mention any black bag.

[10] A similar orange plastic M&M candy container was also found during the seizure but it was empty.

Case 3:23-cr-00472-FAB    Document 92    Filed 04/22/25    Page 7 of 16

*United States v. Randy Ríos Sánchez*                                                                                        Page 7
Crim. No. 23-472 (FAB-MDM)
Report & Recommendation

At around 10:43PM, Officer Lasalle, read and explained to the defendant his *Miranda* rights a third time that day and had him sign a second *Miranda* rights form. *Id.* at 36. *See also* Government's Exhibits 13 & 13a, Docket No. 89-1 at 17-18. As he had done with the first *Miranda* rights form, he checked the box indicating that he understood his rights and he was voluntarily waiving them. *Id.*

Immediately after the defendant waived his *Miranda* rights again, Officer Lasalle began to interview him. During the interview, the defendant mentioned that at the time of the traffic stop, he did not know why he was being stopped. Officer Lasalle explained that it was for failing to wear his seatbelt, whereupon the defendant said aloud, "Oh, I failed at the easy stuff." *Id.* at 33. When asked about the contraband found inside the Vehicle, the defendant said that "everything that was found [i]s [mine] and not [my] brother's." *Id.*

At some point while they were at the Strike Force Unit, Officer Lasalle issued a ticket to the defendant for failing to wear his seatbelt. *Id.* at 35. On the face of the ticket, it mentions that the infraction occurred on "Road 459, Km 1.3," and noted that the ticket was being issued for a violation of Section 13.02 of PR Law 22, which provides that a seatbelt must be worn by the driver and all passengers in any vehicle transiting on Puerto Rico's public roadways.[11] *Id.*

On cross examination during the evidentiary hearing, Officer Lassalle testified that, prior to conducting the traffic stop of the defendant, he had received information from Officer Luis Lacourt, who was purportedly parked in an undisclosed strategic

---

[11] The original Spanish text of Article 13.02 of PR Law 22, codified at 9 L.P.R.A. §5382, provides that the driver and all passengers "shall be required to adjust and properly secure said seat belts while the vehicle is being driven 'por las vías públicas.'" The parties have submitted an English translation that refers to "vías públicas" as "public highways." The Court disagrees with that translation, even though it is the translation that appears in the English version of the law on Westlaw. Instead, the Court finds that the more appropriate translation for "vías públicas" is "public roads," not public highways. Indeed, it would <u>not</u> make sense for the seatbelt requirement to be limited solely to use on the public highways. Moreover, it appears from the photos admitted into evidence that Public Road 459 is not a highway at all, but rather a narrow two-lane street lined with private residences. *See* Government's Exhibits No. 1-6, Docket No. 89-1 at 1-6. Notwithstanding this mis-translation, neither the government nor the defendant appear to dispute the fact that Route 459 is a public road where Law 22, Section 13.02's seatbelt requirement applies.

Case 3:23-cr-00472-FAB Document 92 Filed 04/22/25 Page 8 of 16

*United States v. Randy Ríos Sánchez* Page 8
Crim. No. 23-472 (FAB-MDM)
Report & Recommendation

location when the defendant, his brother and another person had come upon his position. Officer Lacourt told Officer Lasalle that he had observed one of the individuals with a firearm.[12] *Id.* at 45-46. In response to further questioning by Counsel for the defendant during the hearing, Officer Lasalle conceded that he did not include that detail in any of his written reports. *Id.* at 46-47.

The defense then submitted by stipulation the testimony of Ms. Roldán, who indicated that the access road which connects the Super Famcoop supermarket to the PR Road 459 does not belong to and is not managed by DTOP.[13] The stipulation also included a map depicting the exact road that is being referenced by her testimony. *See* Defendant's Exhibit B, Docket No. 90-1 at 3-4.[14]

## III. Discussion

The defendant challenges the legality of the traffic stop conducted by Officer Lasalle based on two grounds. First, he argues that "[t]he roadway upon which Mr. Ríos was driving at the moment Officer Lasalle effectuated the traffic stop does not fall within the definition of a public roadway" because it does not fall under

---

[12] The testimony deduced during the hearing did not indicate which of the three individuals was seen in possession of the firearm.

[13] I can only surmise that the relevance of Ms. Roldán's testimony at the hearing was that the defense was not aware upon filing the Motion to Suppress, nor upon starting the evidentiary hearing, that PRIDCO owned and controlled what is now being referred as the PRIDCO access road.

[14] The full text of the stipulation regarding Ms. Roldán's testimony is as follows:

> I subscribe to the certification in my official capacity as the Regional Director of the Aguadilla Regional Office of the Department of Transportation and Public Works (DTOP) and its contents is known to me according to official documents that were in our archives.
>
> The street depicted in the attached map begins at intersection with the Road PR-459, Kilometer 1.4 at the coordinates 18.45.45.45 Cam Ray-67.135969 and ending at the coordinates 18.455720, Ray-67.138169. The street depicted in the attached map is not marked for the Puerto Rico State filing system. The street depicted in the attached map is not under the jurisdiction of the Department of Transportation and other ports. The street is not part of the Puerto Rico State IRA system. Therefore, we do not have any information related to this design, construction and maintenance. The certification from Ms. Roldan is titled at the top 'negative certificate request for information Randy Rios Sanchez, case number 23472FAE."

the management of either the Municipality of Aguadilla or the Commonwealth of Puerto Rico. As a result, the defendant and his passenger not wearing their seatbelts while driving on a private access road would not constitute probable cause to believe a traffic violation had occurred. Second, and in the alternative, even if the Court were to find that there was probable cause to believe that a traffic violation had occurred, Officer Lasalle impermissibly extended the traffic stop beyond that which was needed to effectuate the "seizure's mission" and investigated an unrelated matter without having the requisite reasonable articulable suspicion to do so. Addressing these arguments in turn, I find that the defendant is mistaken as to both grounds. The Court explains.

### A. The Traffic Stop

A traffic stop is considered to be a seizure within the meaning of the Fourth Amendment. *United States v. Arias*, 588 F. Supp. 2d 237, 239 (2008) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). As a consequence, it must be reasonable under the circumstances in order to pass constitutional muster. *United States v. Chhien*, 266 F.3d 1, 5 (1st Cir. 2001) (A traffic stop "constitutes a seizure within the purview of the Fourth Amendment . . . [and] must be reasonable under the circumstances"). Moreover, as in the case of any warrantless search or seizure, the burden is on the government to establish that the stop was reasonable. *Arias*, at 239 (citing *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001)).

A brief investigatory traffic stop does not violate the Fourth Amendment if police have a reasonable, articulable suspicion, based on objective facts, that the occupants of the vehicle are engaged in criminal activity, or if there is probable cause to believe that a traffic violation has been committed. *United States v. Arias*, at 239 (*citing United States v. Chhien*, 266 F.3d at 6 (A traffic stop "must be supported by a reasonable and articulable suspicion of criminal activity") (*citing Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)); *United States v. Harris*, 526 F.3d 1334, 1337–38 (11th Cir. 2008) (A traffic stop is constitutional "if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in

Case 3:23-cr-00472-FAB   Document 92   Filed 04/22/25   Page 10 of 16

*United States v. Randy Ríos Sánchez*  Page 10
Crim. No. 23-472 (FAB-MDM)
Report & Recommendation

accordance with *Terry* [*v. Ohio* ], 392 U.S. 1 [ (1968) ]") (citations omitted). See *also United States v. Starks*, 301 F. Supp. 2d 76, 81 (1st Cir. 2004).

When officers have probable cause to believe that a traffic violation has occurred, a vehicle stop is not rendered unconstitutional merely because the officers conducting the stop were mistaken as to the facts. *United States v. Jenkins*, 452 F.3d 207, 212 (2d Cir. 2006). Indeed, "[s]imple mistakes of law and fact, if objectively reasonable, can provide justification for a traffic stop." *United States v. Wilkins*, 451 F. Supp. 3d 222, 226 (1st Cir. 2014) (citing *Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014) (officer reasonably believed that the state vehicle code required that a car be equipped with two working brake lights). Nor is a vehicle stop rendered unconstitutional simply because the violation was a pretext for seeking to obtain evidence of suspected criminal activity. *Arias*, at 240 (citing *United States v. Robinson*, 414 U.S. 218, 221 n.1 (1973) (A traffic stop is not rendered invalid by the fact that it was "a mere pretext for a narcotics search"); *United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996) ("[T]he stop is valid even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot."). The relevant inquiry is whether the stop was objectively reasonable and not what the officer's subjective intent was. *Whren v. United States*, 517 U.S. at 813 (confirming that "[s]ubjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional") (internal citation omitted). The determination as to whether a traffic stop was reasonable must be based on the totality of the circumstances as they existed at the time of the stop. *Arias*, at 240 (citing *United States v. Arvizu*, 534 U.S. 266 (2002) and *United States v. Walker*, 924 F.2d 1, 3–4 (1st Cir. 1991)).

In this case, the Court does not have to venture down the rabbit hole of whether there was a mistake of law or a mistake of fact because, based on the credible evidence presented during the suppression hearing and the stipulation of the parties, I find that there was neither a mistake of law nor a mistake of fact. Instead, the record demonstrates that the traffic stop was fully supported by probable cause to believe that a traffic violation had been committed. The Court explains further.

Officer Lasalle credibly testified that he first saw the defendant and his brother drive past his patrol car as he and Officer Vázquez were exiting the Super Famcoop supermarket. Officer Lasalle said he noticed that all of the windows of the defendant's Vehicle were fully down and he could see that neither the defendant nor the passenger were wearing their seatbelts as they drove down the PRIDCO owned access road, a public road, in violation of Puerto Rico's traffic laws. Officer Lasalle exited the supermarket and followed the defendant's Vehicle on the PRIDCO owned access road heading towards PR Road 459. Though Officer Lasalle activated his lights and siren when he witnessed the defendant without his seatbelt on the PRIDCO owned access road, the traffic stop actually took place only after the defendant had turned onto PR Road 459.

The defendant argued in his Motion to Suppress that he was pulled over while he was still on the PRIDCO owned access road, but that contention is simply not supported by any evidence in the record. Indeed, the Court found Officer Lasalle to be credible when he testified that the stop occurred on PR Road 459. Furthermore, the fact that the stop occurred on PR Road 459 is corroborated by the actual ticket that was issued to the defendant that day wherein it identified "Road 459, km. 1.3," as the location the violation occurred. Moreover, given the fact that both PR Road 459 and the PRIDCO owned access road are both public roads under Puerto Rico's Traffic Law (*see* 9 P.R. Laws § 5001 (113) (2000)), whether he was actually stopped on one road or the other has absolutely no bearing on the determination of probable cause to believe that a traffic violation had occurred. Indeed, the failure to wear a seatbelt while driving on either road would constitute a consummated violation of Puerto Rico's Traffic Law. Therefore, given the fact that Officer Lasalle witnessed the defendant and his brother not wearing their seatbelts on the PRIDCO owned access road provides sufficient probable cause to effectuate a traffic stop on PR Road 459.

Case 3:23-cr-00472-FAB   Document 92   Filed 04/22/25   Page 12 of 16

*United States v. Randy Ríos Sánchez*  Page 12
Crim. No. 23-472 (FAB-MDM)
Report & Recommendation

In short, the Court finds that defendant's attack on the probable cause that existed for Officer Lasalle to effectuate a traffic stop of the defendant's Vehicle on PR Road 459 is misguided as a matter of fact and law. I further find that Officer Lasalle witnessed the defendant and his brother committing a traffic violation by not wearing their seatbelts while driving on a public road in Puerto Rico.[15] And for that reason, Officer Lasalle had probable cause to perform a routine traffic stop of the defendant's Vehicle. I therefore recommend **DENIAL** of the Motion to Suppress based on this first ground posited by the defendant.

### B. The Warrantless Search of the Defendant's Vehicle

Having found that the initial traffic stop of defendant's Vehicle was supported by probable cause for the commission of a traffic violation, I now move on to the question of the legality of Officer Lasalle's warrantless search of the defendant's person and his Vehicle. The defendant contends that the search was unconstitutional because Officer Lasalle impermissibly extended his detention beyond the scope and "mission" of the initial detention without the requisite reasonable articulable suspicion. *See Rodríguez v. United States*, 575 U.S. 348 (2015). For the reasons that follow, I find that the defendant's argument does not hold water.

When police officers perform a traffic stop not based on a traffic violation, courts review the constitutionality of that stop based on factors governing an investigatory stop under the seminal case of *Terry v. Ohio*.[16] Under *Terry v. Ohio*, police officers may detain a vehicle if they have reasonable articulable suspicion that

---

[15] In his Motion to Suppress, the defendant also alluded to the possibility that the defendant and his brother *were* actually wearing their seatbelts, but in such a way that the officers could not see the seatbelts fastened, like across their waist, not across their chests. *See* Docket No. 21 at 4. Officer Lasalle testified credibly that through the open windows he could see that the seat belts "were positioned vertically down, the way that they come with the car." Docket No. 65 at 18. As a matter of fact, I believe Officer Lasalle and further find that there is no way for the seatbelts to have been "positioned vertically" while at the same time fastened across their waists. Moreover, even if they were so fastened, Article 13.02 of PR Law 22, codified at 9 L.P.R.A. §5382, requires the driver of any vehicle "to adjust and *properly secure said seat belts while the vehicle is being driven on the public [roads]*." Accordingly, even if their seatbelts were fastened in the manner suggested by counsel, that would not have absolved them from violating Article 13.02 of Law 22.

[16] 392 U.S. 1 (1968).

criminal activity is afoot. Similarly, a traffic stop based on probable cause for having committed a traffic violation may morph into a deeper investigation as the stop proceeds. *United States v. Soares*, 451 F. Supp. 2d 282, 287 (1st Cir. 2006). Like the reasonable suspicion that criminal activity is afoot in the *Terry* context, the detection of a traffic violation permits officers to effect a limited seizure of the driver and any passengers consistent with the Fourth Amendment. *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *Brendlin v. California*, 551 U.S. 249, 255, (2007) (holding that "during a traffic stop an officer seizes everyone in the vehicle, not just the driver"); *United States v. Chaney*, 584 F.3d 20, 24 (1st Cir. 2009). Thus, the Supreme Court has held that officers may order the driver and any passengers to get out of the car until the traffic stop is complete, *see Maryland v. Wilson*, 519 U.S. 408, 415, 117 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 111 & n.6 (1977) (per curiam) (citing *Terry* as controlling). *Johnson*, 129 S. Ct. at 787. Information developed in connection with that temporary investigative stop may in turn provide grounds for a full custody arrest. *See United States v. Bizier*, 111 F.3d 214, 218–19 (1st Cir. 1997) (Although a pat-frisk may be unwarranted when a stop initially occurs, subsequent events may give rise to probable cause as the stop proceeds.) (citing *Maryland v. Pringle*, 540 U.S. 366 (2003)).

The law also provides that a police officer may effect a warrantless search of the interior of a motor vehicle on a public thoroughfare as long as he has probable cause to believe that the vehicle contains contraband or other evidence of criminal activity. In cases where officers have detected the odor of marijuana emanating from a confined area, such as the passenger compartment of a motor vehicle, the First Circuit has consistently held that such olfactory evidence furnishes law enforcement with probable cause to conduct a search of the confined area. *United States v. Taylor*, 162 F.3d 12 (1st Cir. 1998) (When looking in the vehicle, the officers "immediately detected a 'strong odor' of marijuana. That observation provided probable cause for a search of the car for narcotics."). *See also United States v. Staula*, 80 F.3d 596 (1st Cir. 1996) (citing *United States v. Martínez–Molina*, 64 F.3d 719, 726

Case 3:23-cr-00472-FAB    Document 92    Filed 04/22/25    Page 14 of 16

*United States v. Randy Ríos Sánchez*                                                                   Page 14
Crim. No. 23-472 (FAB-MDM)
Report & Recommendation

n.5 (1st Cir. 1995) and *United States v. Panitz*, 907 F.2d 1267, 1271 (1st Cir. 1990)). *See also United States v. Johns*, 469 U.S. 478, 482 (1985); *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir. 1995); *United States v. French*, 974 F.2d 687, 692 (6th Cir. 1992).

The Court must determine whether the government has made a sufficient showing of probable cause by examining the totality of the circumstances. *Staula*, 80 F.3d at 602 ((citing *United States v. Nocella*, 849 F.2d 33, 39 (1st Cir. 1988) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983))). Moreover, the law recognizes that a vehicle search under this exception may encompass all areas of the vehicle in which the suspected contraband is likely to be found. *Staula*, 80 F.3d at 602 (citing *United States v. Maguire*, 918 F.2d 254, 260 (1st Cir. 1990)).

In the present case, the defendant contends that the extension of the traffic stop to conduct the dog sniff was done without reasonable suspicion and therefore constitutes an unreasonable seizure. I find that argument is not supported by the credible evidence gleaned from the evidentiary hearing. Indeed, in promoting such an argument, the defendant completely ignores the otherwise credible testimony given by Officer Lasalle that when he approached the defendant's Vehicle, he detected a strong odor of marijuana. And only after confirming that the defendant did not possess a cannabis license did he consult his supervisor, Lieutenant Omar Rosa, who requested the assistance of the K-9 Unit. This is a classic example where an otherwise legal traffic stop based on probable cause for having committed a traffic violation morphed into a deeper investigation as the stop proceeded. *Soares*, 451 F. Supp. 2d at 287. Unlike the cases cited by the defendant in support of his Motion to Suppress, in this case, Officer Lasalle developed independent evidence of criminality (the strong odor of marijuana) that justified the extension of the traffic stop.[17]

---

[17] The case law cited by the defendant in support of his contention that Officer Lasalle impermissibly extended defendant's detention is inapposite because in each case cited there was no independent evidence obtained during the "mission" of the stop supporting a reasonable suspicion that criminal activity was afoot. In each case the "mission" of the traffic stop had concluded yet the officers continued with what the courts considered to be collateral investigations that went beyond the scope of the initial traffic stops. *See Rodríguez v. United States*, 575 U.S. 348 (2015) ("Because addressing

Case 3:23-cr-00472-FAB Document 92 Filed 04/22/25 Page 15 of 16

*United States v. Randy Ríos Sánchez* Page 15
Crim. No. 23-472 (FAB-MDM)
Report & Recommendation

Furthermore, in this case, the police officers had probable cause to search the Vehicle even before the K-9 unit arrived. The detection of the odor of marijuana emanating from the confined cabin area of the Vehicle elevated the circumstances from reasonable articulable suspicion to probable cause to believe that the Vehicle contained contraband and evidence of criminal activity that would have justified a search of the entire passenger cabin wherever controlled substances could be found, including on the defendant's person, in the back seat, and in the center console where the cup containing the marijuana butts were found. *See Taylor*, 162 F.3d at 20-21.

In summary, the Court finds that the law enforcement agents acted wholly within the bounds of the law in effectuating a traffic stop based on probable cause of defendant having committed a traffic violation in their presence, which circumstances later morphed into reasonable articulable suspicion and then probable cause that controlled substances were located in the car and on the defendant's person. For that reason, the Court **RECOMMENDS** that the Motion to Suppress be **DENIED** as to this ground as well.[18]

---

the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate th[at] purpose." Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.) (Internal citations omitted). *See also United States v. Clark*, 902 F.3d 404 (3d Cir. 2018) (the Court found that Officer Daniel Bradley did not acquire reasonable suspicion *during the stop's mission* sufficient to prolong it. (Emphasis added.)). In this case, Officer Lasalle detected the smell of marijuana as one of the very first things he did in carrying out the "mission" of the traffic stop.

[18] The Court acknowledges that the government also presented evidence during the hearing that **1)** Officer Lasalle said that he feared for his life during the traffic stop "because they were in a high criminal incidents zone," and that "annually, many police officers are killed [while on duty]," (Docket No. 65 at 54; **2)** Officer Lasalle said on cross examination that fellow Officer Luis Lacourt had observed what looked like a firearm being possessed by someone in the car; and **3)** Officer Lasalle said that the information from Officer Lacourt regarding his having observed a firearm was not included in any of his own written reports. The Court notes that the safety and security of the officers did not play a significant role, if any, in justifying the government's warrantless search of the Vehicle. The Court finds that the detection of the odor of marijuana emanating from inside the Vehicle established sufficient probable cause to justify a search of the entire cabin area of the Vehicle, including the back seat, which is were the firearm was found, and his person, which is where the cocaine was found inside the green M&M candy container. The Court deems it unnecessary to venture down the rabbit hole of whether the safety of the officers and the possible presence of a firearm justified the warrantless search of the Vehicle. Given the size and shape of the firearm, the officers would have likely found it in all the same places where controlled substances might be found. Therefore, the probable cause to search

Case 3:23-cr-00472-FAB   Document 92   Filed 04/22/25   Page 16 of 16

*United States v. Randy Ríos Sánchez*   Page 16
Crim. No. 23-472 (FAB-MDM)
Report & Recommendation

## IV. Conclusion

For the reasons discussed above, the Court **RECOMMENDS** that the Defendant's Motion to Suppress (Docket No. 21) be **DENIED**.

**IT IS SO RECOMMENDED.**

The parties have fourteen days to file any objections to this Report and Recommendation. Failure to file the same within the specified time waives the right to appeal this Report and Recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 22nd day of April 2025.

*s/Marshal D. Morgan*
MARSHAL D. MORGAN
UNITED STATES MAGISTRATE JUDGE

---

the Vehicle for controlled substances more than adequately justified the search and seizure of the firearm and the cocaine as well.