IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>**v.**<br><br>RANDY RÍOS-SÁNCHEZ [1],<br><br>**Defendant.** | **Criminal No.** 23-472 (FAB) |

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Before the Court is defendant Randy Ríos-Sánchez ("Ríos")'s motion to suppress. (Docket No. 21.) Ríos moves to suppress evidence obtained from searches of his person and vehicle in violation of his Fourth Amendment rights. (Docket No. 21.) The Court referred the motion to suppress to Magistrate Judge Marshal D. Morgan for report and recommendation ("R&R"). (Docket Nos. 22, 23.) Magistrate Judge Morgan held an evidentiary hearing (Docket Nos. 60, 66, 72), and issued a R&R recommending that the Court deny Ríos' motion to suppress. Docket No. 91; see United States v. Ríos-Sánchez, Case No. 23-472, 2025 WL 1166554 (D.P.R. April 22, 2025). Torres objected, and the government did not respond. (Docket No. 99.) For the reasons set forth below, the R&R is **ADOPTED**. Accordingly, Ríos' motion to suppress is **DENIED**. (Docket No. 21.)

Criminal No. 23-472 (FAB)                                                                 2

## I. Background

On December 26, 2023, at approximately 5:30 p.m., Ríos was stopped by Officer Lasalle and a fellow officer, who were patrolling the area of Aguadilla. Officer Lasalle had noticed a black Hyundai Venue drive in front of his patrol car as he exited the Super Famcoop supermarket. Ríos-Sánchez, 2025 WL 1166554, at *1. Ríos was driving the Venue on a road owned by and under the control of the Puerto Rico Industrial Development Company ("PRIDCO")[1] and was heading towards P.R. Road 459. Id. The Venue had all its windows rolled down and Officer Lasalle noticed that the two individuals in the car were not wearing their seatbelts, in violation of Puerto Rico's Law 22.[2] Id. Upon exiting Famcoop's parking lot, Officer Lasalle followed the car on the PRIDCO-owned

---

[1] PRIDCO is a public corporation of the Government of Puerto Rico created pursuant to Act No. 188 of May 11, 1942, as amended. PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY, https://www.aafaf.pr.gov/puerto-rico-issuers/puerto-rico-industrial-development-company-pridco last accessed on June 26, 2025).

[2] "The use of safety seat belts and child protection seats, shall be done according to the following rules:

(a) Any person who drives or is a passenger on the public highways in a motor vehicle which must be equipped with safety seat belts according to § 5381 of this title, seat belts that are available and in usable condition, shall be obliged to adjust and properly secure said seat belts while the vehicle is being driven on the public highways. It shall be the duty of every driver to require every occupant of the vehicle to use the available safety seat belts, and shall be liable for failing to do so. In addition, it shall be the duty of every driver not to transport more passengers than the number of available functional safety seat belts in said motor vehicle." P.R. Laws Ann. Tit. 9, § 5382.

Criminal No. 23-472 (FAB)                                              3
_____

road heading towards P.R. Road 459.  When the Venue was still on the PRIDCO road, Officer Lasalle activated his lights and siren to perform a traffic stop.  Id.  After turning onto P.R. Road 459, Ríos pulled the car over to the side of the road without incident.  Id.  The actual traffic stop was made at kilometer 1.3 on PR Road 459.  Id.  As Officer Lasalle approached the vehicle to ask the driver, i.e., Ríos, for his license and registration, he observed again that neither occupant had their seatbelts on.  Id.  Officer Lasalle also detected a strong odor of marihuana, and asked Ríos if he possessed a cannabis license, to which he responded, "No."  Id.  After detecting the odor of marihuana, Officer Lasalle contacted his supervisor, Lieutenant Omar Rosa, who requested the assistance of a K-9 unit.  Id.

While waiting for the K-9 unit, Officer Lasalle ordered everyone out of the car and patted Ríos down.  Office Lasalle felt something in Ríos' right front pant pocket.  He could not identify at that time whether it was a firearm, a magazine, or perhaps something else.  Officer Lasalle immediately informed Ríos of his Miranda[3] rights verbally, which the defendant said he understood.  Id. at *2.  The item in his pocket ended up being a cylindrical green plastic M&M candy container whose top was partially opened when Officer Lasalle removed it from the pocket.  Id.  Inside,

---

[3] Miranda v. Arizona, 348 U.S. 436 (1966).

Criminal No. 23-472 (FAB)                                                 4

there was an undisclosed number of small clear pressure-sealed bags containing cocaine.  Id.

The K-9 unit arrived approximately 3-5 minutes after it was requested.  Id.  Officer González, the handler of the K-9 dog, walked around the Venue until the dog stopped near the front passenger-side door and alerted to the presence of controlled substances inside.  Id.  After the canine alerted to the presence of controlled substances, Officer Lasalle sealed the car with red tape and placed his initials on the tape.  Id.  A police tow truck transported the Venue to the Aguadilla Strike Force Unit.  Id.  Ríos was in the marked patrol car during this time.  (Docket No. 65 at p. 24.)

Once they arrived at the Strike Force Unit, Ríos was again read and explained his Miranda rights, and was also given a copy of the Miranda rights form for him to read and sign.  Ríos signed the form waiving his Miranda rights around 6:29 p.m.  Id.  Ríos was also given a Consent to Search form, which was read and explained aloud to him, which he signed.  Id.  After obtaining Ríos' consent to search the Venue, Officer Lasalle searched it in Ríos' presence.  Id.  In the back seat area, Officer Lasalle found a light gray Ruger pistol, loaded with eight bullets, together with a clear plastic bag containing marihuana.  Id.  In the middle console between the two front seats, there was a black plastic cup

Criminal No. 23-472 (FAB)                                          5

containing the remnants of several smoked marihuana cigarettes. Id.

A grand jury returned an indictment on December 28, 2023, charging Ríos with possessing firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (count one), and possession with intent to distribute controlled substances, cocaine base, in violation of 21 U.S.C. § 841(a)(1) (count two).  (Docket No. 3.)

Ríos moved to suppress the evidence found because of a Fourth Amendment violation.  He first argues that Officer Lasalle stopped the Venue without reasonable suspicion that a crime was being committed or without probable cause that there was a traffic violation committed.  Torres next argued that Officer Lasalle extended the stop improperly when he called the K-9 unit.  (Docket No. 21.)  Magistrate Judge Morgan conducted a three-day suppression hearing, where Officer Lasalle testified as to the stop of the Venue and the search of Ríos' person and vehicle. (Docket Nos. 60, 65, 66, 72.)  The government and Ríos filed post-hearing briefs on December 5, 2024 and January 27, 2025, respectively.  (Docket Nos. 77, 85.)  Magistrate Judge Morgan then issued the concomitant R&R on April 22, 2025, recommending that Ríos' motion to suppress be denied. (Docket No. 92.)  On May 13, 2025, Ríos filed objections to the R&R.  (Docket No. 99.)

## II. Standard

A district court may refer a pending motion to a magistrate judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B); Local Rules Dist. P.R.R. 72(a). Any party adversely affected by the R&R may file written objections within fourteen days of being served with the magistrate judge's report. See 28 U.S.C. § 636(b)(1); Local Rules Dist. P.R.R. 72(d). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Failure to comply with this rule precludes further review. See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); Álamo Rodríguez v. Pfizer Pharms., Inc., 286 F. Supp. 2d 144, 146 (D.P.R. 2003) (Domínguez, J.). Furthermore, the Court may accept those parts of the R&R to which the parties do not object. See Hernández-Mejías v. General Elec., 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (Fusté, J.) (citation omitted).

Criminal No. 23-472 (FAB)                                                    7

## III. Discussion

Ríos objects to the R&R on two grounds.  First, he argues that the R&R "relies on the mistaken belief that [he] conceded the [PRIDCO-owned} roadway is public property."  (Docket No. 99 at p. 1.)  According to Ríos, he was driving on the PRIDCO owned road - a private road - and the law pertaining to the use of seatbelts only applies when driving on public roads.  Therefore, Ríos argues that he was unlawfully stopped because he did not commit any traffic violation.  Second, Ríos argues that Officer Lasalle did not have reasonable suspicion to extend the stop when he patted Ríos down and called for the K-9 unit.  (Docket No. 99.)

### A.   The Initial Traffic Stop

Ríos argues that the R&R erred in finding that the initial traffic stop did not violate his Fourth Amendment rights. Ríos' argument hinges on whether the road where Officer Lasalle turned on his lights and sirens was a public or a private road. He explains that if the PRIDCO-owned road is private, then he could not have committed a traffic violation, and there was no reasonable suspicion or probable cause to stop him.  (Docket No. 99 at pp. 3-5.)

Magistrate Judge Morgan stated that even "though Officer Lasalle activated his lights and siren when he witnessed the defendant without his seatbelt on the PRIDCO-owned access road,

the traffic stop actually took place only after the defendant had turned onto PR Road 459." Ríos-Sánchez, 2025 WL 1166554, at *5. He further indicated stated that "given the fact that both P.R. Road 459 and the PRIDCO-owned access road are both public roads under Puerto Rico's Traffic Law . . . whether he was actually stopped on one road or the other has absolutely no bearing on the determination of probable cause to believe that a traffic violation had occurred." Id. Therefore, Magistrate Judge Morgan found that there was probable cause and the traffic stop was lawful.

"A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." Heien v. North Carolina, 574 U.S. 54, 60 (2014) (quoting Brendlin v. California, 551 U.S. 249, 255-259 (2007)). The traffic stop must either be based on "probable cause to believe that a traffic violation has occurred" or on a "reasonably grounded" suspicion that "criminal activity is afoot." Whren v. United States, 517 U.S. 806, 810 (1996); Arizona v. Johnson, 555 U.S. 323, 330 (2009).

Pursuant to P.R. Law 22, "any person who drives or is a passenger on the public highways in a motor vehicle . . . shall be obliged to adjust and properly secure [the] seat belts while the vehicle is being driven on the public highways." P.R. Laws Ann. Tit. 9, § 5382(a). A public highway "shall mean any street, road

or state or municipal highway, as well as any street, road or highway located on the lands belonging to public corporations created by law and their subsidiaries, and shall comprise the total width between the boundary lines of every public highway open to public use for the traffic of vehicles or motor vehicles." P.R. Laws Ann. Tit. 9, § 5001(113). Both parties agree that the road where Officer Lasalle saw Ríos not wearing a seat belt is owned by PRIDCO. See Docket Nos. 77 and 85. PRIDCO is a public corporation created by law. See Puerto Rico Fiscal Agency and Financial Advisory Authority, https://www.aafaf.pr.gov/puerto-rico-issuers/puerto-rico-industrial-development-company-pridco (last accessed on June 26, 2025). Because the PRIDCO-owned road is, by definition, a "public highway" pursuant to P.R. Law 22, Ríos did in fact commit a traffic violation by not wearing his seatbelt on the PRIDCO-owned road. Therefore, the Court agrees with Magistrate Judge Morgan's determination that the traffic stop was lawful.

  B.  **Extension of Ríos' Seizure**

Ríos next argues that the magistrate judge erred in finding that there was reasonable suspicion to extend the stop and search Ríos' person and his vehicle. (Docket No. 99 at pp. 5-7.) Magistrate Judge Morgan indicated in the R&R that "[t]he detection of the odor of marijuana emanating from the confined cabin area of the Vehicle elevated the circumstances from reasonable articulable

Criminal No. 23-472 (FAB)                                                                 10

suspicion to probable cause to believe that the Vehicle contained contraband and evidence of criminal activity that would have justified a search of the entire passenger cabin wherever controlled substances could be found, including on the defendant's person, in the back seat and in the center console where the cup containing the marijuana butts were found." Ríos-Sánchez, 2025 WL 1166554, *7.

An officer may prolong a lawful stop to conduct certain checks, including an examination of both the driver's and vehicle's documents. United States v. Pavao, 134 F.4th 649, 654 (1st Cir. 2025). An officer, however, may not prolong it beyond the time reasonably required to complete the mission of the stop unless he has "the reasonable suspicion ordinarily demanded to justify detaining an individual." Rodriguez v. United States, 575 U.S. 348, 354-55 (2015). That is, prolonging a stop "must be supported by a reasonable and articulable suspicion of criminal activity." United States v. Chhien, 266 F.3d 1, 6 (1st Cir. 2001).

When viewing at a "traffic stop", the Court asks "whether the officer's actions were justified at their inception, and if so, whether the officer's subsequent actions were fairly responsive to the emerging tableau – the circumstances originally warranting the stop, informed by what occurred and what the officer learned, as the stop progressed." Id. There is no hard time

Criminal No. 23-472 (FAB)                                           11

limit; the officer need only work promptly to confirm or dispel his suspicions.  See United States v. McGregor, 650 F.3d 813, 820 (1st Cir. 2011).

      The officer's actions here did not unreasonably extend the initial stop.  As discussed above, the initial stop was lawful and warranted stopping the vehicle.  As Officer Lasalle was approaching the vehicle, he detected the smell of burnt marihuana from the vehicle's driver's side.  (Docket No. 65 at pp. 18-19.)  "[T]he mere odor of burnt marijuana justifies detaining a vehicle in order to search it."  Pavao, 134 F.4th at 656-57 (internal quotations omitted).  Officer Lasalle also asked Ríos if he had a cannabis permit and Ríos responded in the negative.  (Docket No. 65 at pp. 18-19.)  While Ríos objects to the fact that Officer Lasalle did not also ask the passenger if he had a cannabis permit, even if he did, "possession of marijuana in any amount remains a federal crime . . . which independently supports an arrest."  Pavao, 134 F.4th at 656-57.  Therefore, Officer Lasalle had reasonable suspicion that there may be drugs in the vehicle and was justified in calling for a K-9 unit and waiting five to seven minutes for its arrival.  This is not an unreasonable extension.[4]  See United States v. Nieves, 256 F. Supp. 3d 133, 137-38 (D.P.R. 2017)

---

[4] The vehicle search occurred at the station after Ríos gave his consent. Ríos has not challenged the validity of his consent.  See Ríos-Sánchez, 2025 WL 1166554, at *2, n.8.

(Delgado-Hernández, J.) (finding that a stop was not extended unreasonably when a K-9 unit to arrive no more than ten minutes after it was summoned); see also United States v. Sanford, 806 F.3d 9954, 959 (7th Cir. 2015) (holding that there was reasonable suspicion for the officer to prolong the stop by about eight minutes to wait for the K-9 unit to confirm or dispel his suspicion).

Ríos also argues that there was no reasonable suspicion to ask him to exit the vehicle and pat him down.  In Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977), the Supreme Court held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."  Id. at 111 n.6.  Because the initial stop was lawful, Officer Lasalle could order Ríos to step out of the vehicle without violating the Fourth Amendment.  The Court thus turns to whether Officer Lasalle's pat-down withstands scrutiny.

"Officers who conduct routine traffic stops may perform a patdown of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous."  Arizona v. Johnson, 555 U.S. 323, 332 (2009) (internal quotations omitted).  "[W]hether an officer's suspicions are reasonable is a fact-sensitive task which

Criminal No. 23-472 (FAB)                                              13

looks at the totality of the circumstances to determine whether there is a particularized, objective basis to suspect someone is armed and dangerous." Pavao, 134 F.4th at 658 (internal quotations omitted).

    The R&R indicated that the detection of the odor of marihuana gave probable cause that justified the search of the vehicle, including Ríos' person. Ríos-Sánchez, 2025 WL 1166554, at *8.  Despite hearing evidence from Officer Lasalle about his safety concerns and that he had learned from another officer that someone in the Venue had a firearm, Magistrate Judge Morgan "deem[ed] it unnecessary to venture down the rabbit hole of whether the safety of the officers and the possible presence of a firearm justifies the warrantless search of the vehicle." Id. at *18 n.18. But this misses the point.  While the Court agrees with the R&R that the odor of marihuana is sufficient to prolong the stop and to search the vehicle with a K-9 unit, Magistrate Judge Morgan still needed to determine if there was reasonable suspicion to pat Ríos down.  Per Officer Lasalle's testimony, he patted Ríos down **before** the K-9 unit arrived.  Officer Lasalle testified that he feared for his life and that prior to stopping Ríos' Venue, he had been previously informed by another officer that someone in the Venue had a firearm.  During cross-examination, however, Officer Lasalle conceded that he did not write this detail in any report.

Criminal No. 23-472 (FAB)                                          14

This seems to be a credibility determination that Magistrate Judge Morgan failed to do, and this Court is not able to determine that issue either.  There is no testimony that contraband was in plain view or that Ríos was acting strangely and making furtive movements.  Therefore, the Court finds that the pat-down violated the Fourth Amendment.

This unlawful search of Ríos' person led to Officer Lasalle finding a green M&M container with "an undisclosed number of small clear pressure-sealed bags containing cocaine." Ríos-Sánchez, 2025 WL 1166554, at *2.  Generally, this evidence would be suppressed as "fruit of the poisonous tree" unless the government can establish by a preponderance of the evidence that it would have been inevitably discovered.  See Nix v. Williams, 467 U.S. 431, 444 (1984) ("If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means — here the volunteers' search — then the deterrence rationale has so little basis that the evidence should be received.").

In this case, the green M&M container would have been inevitably discovered.  When the K-9 unit marked the presence of controlled substances, Officer Lasalle was "entitled to increase the scope of the investigation." United States v. Carr, 534 F. Supp. 3d 143, 151 (D. Me. 2021) (citing Chhien, 266 F.3d at 6).

Criminal No. 23-472 (FAB)                                                 15

It gave Officer Lasalle probable cause to search the vehicle.  Upon searching the Venue at the Strike Force Unit, he found a gun and drugs.  This gave Officer Lasalle probable cause to arrest Ríos.  If the vehicle had been searched roadside instead of at the Strike Force Unit, Ríos would have been searched incident to arrest, and would have been frisked for weapons or contraband.  See United States v. Fiasconaro, 315 F.3d 28, 37 (1st Cir. 2006) ("It is also well established that the defendant's lawful arrest permits the police to search his person . . ."); see also United States v. Winchenbach, 197 F.3d 548, 552 (1st Cir. 1999) ("[I]t is beyond peradventure that a search of an individual's person made incident to a valid arrest is itself valid, despite the absence of an arrest warrant."); United States v. González-Seda, 224 F.3d 128, 137 (D.P.R. 2016) (Vélez-Rivé, M.J.) ("It is unquestioned that when a defendant is arrested he may be searched both for evidence of his crimes and for the safety of the officers.").  Therefore, since the green M&M container would have been inevitably discovered, the Court will not order it to be suppressed.

**IV. Conclusion**

For the reasons set forth above, the Court **ADOPTS** the magistrate judge's recommendations that Ríos' motion to suppress be denied.  (Docket No. 92.)  Consequently, Ríos' motion to suppress is **DENIED**.  (Docket No. 21.)

Criminal No. 23-472 (FAB)                                                    16

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 3, 2025.

                                    <u>s/ Francisco A. Besosa</u>
                                    FRANCISCO A. BESOSA
                                    SENIOR UNITED STATES DISTRICT JUDGE